IN THE MATTER OF JOHN MILD, DECEASED.

CATHERINE DORN, SUBSTITUTED ADMINISTRATRIX OF THE ESTATE OF JOHN MILD, DECEASED, AND HARTFORD ACCIDENT AND INDEMNITY COMPANY, ACCOUNTANTS-APPELLANTS, v. KATALIN SCHEUER, ET AL., EXCEPTANTS-RESPONDENTS, AND GEORGE WINNE AND FIRST NATIONAL BANK AND TRUST COMPANY OF PATERSON, SUCCESSOR, ETC., THIRD-PARTY DEFENDANTS-RESPONDENTS.

Argued November 9, 1959—Decided December 7, 1959.

Mr. I. *Charles Lifland* argued the cause for the accountants-appellants (*Mr. John Coleman Lifland,* on the brief).

Mr. *Frank J. Davies, Jr.,* argued the cause for the respondent, First National Bank and Trust Company of Paterson (*Messrs. Davies & Davies,* attorneys; *Mr. Frank J. Davies, Jr.,* on the brief).

*Mr. Walter D. Van Riper* argued the cause for the respondent, George Winne (*Messrs. Van Riper & Belmont,* attorneys).

*Mr. Morton Stavis* argued the cause for the exceptants-respondents (*Messrs. Gross & Stavis,* attorneys).

The opinion of the court was delivered by

PROCTOR, J.   In 1954 Charles Halstead, a New Jersey attorney, absconded with $32,164.70 in assets of the estate of John Mild, and has never been found.   The Bergen County Court surcharged Mrs. Catherine Dorn, substituted administratrix of the estate, for the sum taken by Halstead. On appeal this court reversed the judgment and remanded the case for determination of certain unresolved issues.   25 *N. J.* 467 (1957).   The principal issue was whether prior co-administrators of the estate, who were not parties to the original proceedings, might have been solely or partially responsible for the loss to the estate.   Mrs. Dorn and her surety were also given the opportunity to prove that certain of the assets held by Halstead before her appointment were uncollectible because of his insolvency.   They did not avail themselves of this opportunity.   After the new trial, the County Court found that the estate's loss could not be charged against the original co-administrators, and again held Mrs. Dorn solely responsible.   She and her surety appealed to the Appellate Division and the exceptants cross-appealed from the County Court's denial of interest on the amount surcharged.   We certified the case before consideration there.

On the first appeal we agreed with the County Court that Mrs. Dorn's utter abandonment of her responsibility as administratrix to Halstead, her attorney, was culpably negligent.   However, since the original co-administrators were not parties, and their role in the litigated circumstances was not part of the record, we felt that imposing liability on Mrs. Dorn without examining the conduct of her predecessors might work an injustice.   We therefore exercised our in-

herent power to supervise the performance of the fiduciary duties of the original co-administrators, and directed that on remand Mrs. Dorn join them as third-party defendants. She thereafter filed a third-party complaint in which she alleged that the co-administrators failed in their duty to her to make "full disclosure of all the relevant facts concerning the administration of the estate," and demanded that they be held liable for all sums for which she might be surcharged. Mrs. Dorn contended that the original co-administrators had a duty to disclose to her facts of which they were aware, and suspicions they had concerning Halstead, before she replaced them; that their failure to reveal transactions involving certain assets wrongfully held by Halstead, and their failure to recapture those assets, render them liable. They answered, denying that their actions were negligent, or in any way contributed to the loss sustained by the estate. Further, they pleaded in bar the statute of limitations and a release given them by Mrs. Dorn when she replaced them.

The facts surrounding the $4,325 "receipt" delivered to the original co-administrators by Halstead, and the Varcadipane mortgage, are fully set out in our former opinion. Briefly, the co-administrators discovered soon after their appointment that Halstead, who had represented Mild during his life, may have been holding assets belonging to the estate. Upon their inquiry, Halstead freely admitted holding $4,325 in assets, which he refused to surrender on the ground he planned to remove the co-administrators and substitute Mrs. Dorn, Mild's niece, as administratrix of the estate. The co-administrators were satisfied by his written "receipt" and his promise to deliver the assets if he decided not to move for their replacement. When Halstead did so move, the co-administrators filed a cross-motion that he turn over these assets. Given the complete lack of any reason to believe that Halstead's motives were dishonest, the actions of the co-administrators were entirely reasonable on this score.

The co-administrators learned, after Halstead's motion had been argued and they had been restrained by the County

Court from further proceeding with the estate, that the Varcadipane mortgage, though open of record, may have been paid off to Halstead. The attorney for one of the co-administrators wrote to Halstead, inquiring after the proceeds, and sent a copy of the letter to the judge who was presiding in the matter. Halstead did not answer, but soon afterwards, at a further hearing on Mrs. Dorn's application to be substituted for the co-administrators, the matter was again called to the judge's attention. The court castigated the co-administrators' attorney for writing the letter, reminded the co-administrators that they had been restrained, and refused to hear further discussion of the mortgage.

The attorney who wrote the letter to Halstead also informed Mrs. Dorn, prior to the hearing, of the facts concerning the assets held by Halstead and those surrounding the mortgage, and Mrs. Dorn answered, "Mr. Halstead will take care of it."

Under the circumstances of the restraint, the proceedings in the County Court, and the conversation with Mrs. Dorn, we fail to see what more the co-administrators could have done at that time. It must be remembered that they were dealing with an attorney whose honesty in his 16 years of practice was unquestioned. It should also be noted that the suggestion made by the first record in this case that the co-administrators, after becoming uneasy about Halstead's activities, decided to effect a safe and painless withdrawal from further involvement with the estate is not borne out by the facts as they are now available to us. On the contrary, the co-administrators vigorously resisted Halstead's motion to substitute Mrs. Dorn for them. Only after the County Court became satisfied that Mrs. Dorn was the proper person to administer the estate, and after all the facts known to the co-administrators were communicated to the court, did they end their efforts to retain the administration of the estate.

The sketchy accounting submitted by the co-administrators to Mrs. Dorn, their successor, is somewhat more

troublesome. The County Court ordered that upon substitution the co-administrators submit to Mrs. Dorn a "formal or informal accounting," indicating that they might wind up their involvement with the estate without judicial approval of their account. This order of the court was contrary to *N. J. S. 3A*:6–58. The account submitted to Mrs. Dorn, and approved by her, listed the $4,325 held by Halstead simply as "SUNDRIES: Other Assets," without indicating their nature or whereabouts, and listed the Varcadipane mortgage as an asset worth its face value of $5,000, without reference to its possible payment to Halstead. The account was improper (*R. R.* 4:106–2), but the question in this case is not one of full accounting, but rather one of adequate disclosure, and whether any failure to disclose was a substantial factor contributing to the loss to the estate.

We are unable to see how the nature of the co-administrators' accounting helped cause the loss to the estate. In the first place, a full account would have informed Mrs. Dorn of nothing she did not already know. She had been told of the assets held by Halstead and the circumstances surrounding the Varcadipane mortgage. She admitted that she had questioned Halstead about that mortgage and the other assets, and that he had answered, "It's all turned in the bank, Mrs. Dorn." Second, there is nothing in the record to indicate that the co-administrators suspected or should have suspected Halstead was a thief. Third, we are unable to believe that any further disclosure would have changed Mrs. Dorn's utterly supine attitude and her complete trust in Halstead.

We are satisfied that the co-administrators should not be held liable for any part of Halstead's defalcations on the basis of their conduct. They must be judged in the light of what they then knew, or had reason to know, and not in the light of what later events revealed. Their reliance on Halstead's early and apparently frank acknowledgment that he held the $4,325 for the estate, and his voluntary statement in court that the Varcadipane mortgage had been

paid to him, were entirely reasonable. And though their subsequent accounting to Mrs. Dorn furnishes no example for the guidance of fiduciary officers, it was not so deficient as to have misled her with the knowledge she then had if she had not completely relied on the premise that "Mr. Halstead will take care of it."

In view of this holding, we need not treat the effect of the statute of limitations and Mrs. Dorn's release.

The original exceptants to Mrs. Dorn's account seek in this later proceeding to have interest, from the date of her qualification as administratrix, imposed as part of the judgment against her. This is a matter that should have been raised at the first trial, and was not within the scope of our remand. In any event, in the peculiar circumstances of this case, we believe that the trial judge did not abuse his discretion by refusing to impose interest on the sum for which Mrs. Dorn was surcharged. *Ditmars v. Camden Trust Co.,* 10 *N. J.* 471 at *pages* 491–492 (1952).

The judgment of the County Court is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For reversal*—None.